UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 05-CV-21514-HOEVELER

**CINDY RIVERA, individually,
and as a Personal Representative
of the Estate of Theudis Rivera,**

      Plaintiff,

v.

**AMERICAN MEMORIAL CENTERS, INC.,
a Florida corporation; HOLLOWAY FUNERAL
HOME, INC., a Florida Corporation; WOODLAWN
PARK CEMETERY COMPANY, d/b/a CABALLERO
RIVERO WOODLAWN CEMETERIES AND FUNERAL
HOMES, a Florida corporation; and PREMIER FUNERAL
SERVICES AND CREMATIONS, INC., a Florida corporation.**

      Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO COUNT V AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO COUNTS I, II, III, IV, AND VI

THIS CAUSE comes before the Court upon Motion for Summary Judgment filed on July 10, 2006, by Defendant Premier Funeral Services and Cremations, Inc., ("Premier") in addition to Motions for Summary Judgment filed by Defendants Holloway Funeral Home ("Holloway") and Woodlawn Park Cemetery Company ("Woodlawn"). Defendant American Memorial Centers, Inc. ("AMC") also filed an unopposed Motion for Leave to Adopt Motions for Summary Judgment on October 3, 2006, which the Court hereby GRANTS. The Court has reviewed Defendants' Motions for Summary Judgment and the accompanying briefs and, on October 17, 2006, heard arguments

from the parties. The Court previously has announced several of these rulings, and this order memorializes those rulings and the additional findings contained herein.

The Court has determined that summary judgment is appropriate as to only one of Plaintiff's six claims. For the reasons outlined below, the Court grants summary judgment on the claim of intentional infliction of emotional distress (Count V) as to all Defendants. Having determined that material facts are in dispute as to the remaining claims, i.e. negligence (Count I), breach of contract (Count II), the alleged violations of Florida Statutes § 470 and § 497 (Count III), tortious interference with a dead body (Count IV), and negligent infliction of emotional distress (Count VI), the Court denies summary judgment as to those claims.

## **FACTUAL BACKGROUND**

Plaintiff Cindy Rivera filed a six-count Amended Complaint[1] against Defendants AMC, Holloway, Woodlawn, and Premier related to the Defendants' handling of Plaintiff's spouse's body after he suffered a fatal car accident. The following briefly summarizes the pertinent facts, many of which remain in dispute.

Plaintiff was married to Theudis Rivera, who was killed in a car accident in Lake City, Florida, on June 3, 2003. After the accident, Rivera's body was autopsied by the Medical Examiners Office of Duval County, Florida, and the decedent's inner organs ("viscera") were placed in a red bag marked "Biohazard." The Medical Examiner's

---

[1]Plaintiff's original Complaint filed on June 7, 2005, only included Holloway and Woodlawn as Defendants.

Office did not, apparently as is the usual procedure, put the bag containing the viscera back inside of the body. According to some deposition testimony, the body was too badly damaged to permit the bag of viscera to be placed inside the body. While it is undisputed that the Medical Examiner placed the viscera in a red bag, the path of that bag from that point on is the subject of much dispute and, indeed, is at the center of this litigation.

The parties agree that Defendant AMC was contacted to provide funerary services, but it is unclear as to how that contact was initiated. One of Defendant Premier's representatives, John Knapik, apparently was present when the funeral goods and services were being selected by members of decedent's family. See, "Statement of Funeral Goods and Services Selected," attached to Exhibit A of Plaintiff's Memorandum in Opposition, filed July 31, 2006. The parties do not agree on the question of who were the contracting parties with AMC, but it is undisputed that through AMC or with AMC's participation, Defendants Holloway and Premier were retained to provide certain services.

Defendant Holloway was selected to provide embalming services, and the body and bag of viscera were transported from the Duval County Medical Examiner's Office to Holloway Funeral Home for embalming. The testimony conflicts as to whether Holloway, upon completion of the embalming process, placed the red bag of viscera inside another red bag, or whether the red bag was placed into clear plastic bags, and then into a white bag.

Defendant Premier was selected to transport the embalmed body (and bag of viscera) from Holloway's location to Premier's location in southern Florida, for the

purpose of casketing and dressing the remains, along with performing cosmetology, i.e. applying makeup, etc. The testimony conflicts as to the state of the bag of viscera, i.e., was it red, or was it a red bag inside clear plastic bags, or, was it inside a white bag, when Premier collected the body from Holloway, but it is uncontested that Premier was told that a bag of viscera existed. Apparently Premier picked up not just the embalmed body and the bag of viscera, but also decedent's personal effects such as clothing, etc.

Defendant Woodlawn had been retained by the family to provide funeral services. See Exhibit A, Defendant Premier's Motion for Final Summary Judgment, filed July 10, 2006. The parties disagree as to who contracted with Woodlawn, but it is undisputed that the word "spouse" appears on the face of the contract in the location where "relationship" to the decedent is requested. In light of this arrangement between the family and Woodlawn, Premier transported the body, bag of viscera, and personal effects to Woodlawn for the funeral service.

Following the funeral and burial service on June 7, 2003, Plaintiff and other family members (her sister, Kimberly Stone, and her former brother-in-law, James Stone) returned to Woodlawn to receive the decedent's personal effects. It is undisputed that an unmarked white plastic bag containing what was believed to be the decedent's personal effects was delivered to the family by a Woodlawn employee. The bag was placed in the trunk of the car in which Plaintiff and the Stones were riding to return to their homes in Mississippi. Plaintiff alleges that during the two-day ride and upon arrival in Mississippi on June 9, 2003, a strong odor emanated from the bag which they thought contained the decedent's clothing and jewelry. Ultimately, Mr. Stone opened the bag to discover the decedent's viscera. Police arrived at the scene and,

apparently, reported the incident to state authorities, who in turn reported the incident to Florida authorities.

## ANALYSIS

Summary judgment is warranted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the burden of meeting this exacting standard. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). In determining whether summary judgment is appropriate, the facts and inferences from the facts are viewed in the light most favorable to the non-moving party, and the burden is placed on the moving party to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

The non-moving party, however, bears the burden of coming forward with evidence of each essential element of her claims, such that a reasonable jury could find in her favor. See Earley v. Champion Int'l Corp., 907 F.2d 1077, 1080 (11th Cir. 1990). In response to a properly-supported motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could

reasonably find for the [non-movant]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). The failure of proof concerning an essential element of one of the non-moving party's claims necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment as to that claim. See Celotex, 477 U.S. at 322. If the non-moving party fails to "make a sufficient showing on an essential element of [her] case with respect to which [she] has the burden of proof," then the court must enter summary judgment for the moving party. Gonzalez v. Lee County Hous. Auth., 161 F.3d 1290, 1294 (11th Cir. 1998). The Court will address each of Plaintiff's six claims below, beginning with the sole count on which summary judgment is appropriate.

**Intentional Infliction of Emotional Distress claim**

To prove intentional infliction of emotional distress ("IIED") under Florida law, the plaintiff must prove: (1) deliberate or reckless infliction of mental suffering; (2) by outrageous conduct; (3) which conduct must have caused the suffering; and (4) the suffering must have been severe. Metropolitan Life Ins. Co. v. McCarson, 467 So.2d 277, 278 (Fla. 1985) (adopting definition found in Restatement (Second) of Torts § 46). Conduct is intentional "[w]here the actor knows that [severe] distress is certain, or substantially certain to result from his conduct." Ford Motor Credit Co. v. Sheehan, 373 So.2d 956, 958 (Fla. 1st DCA 1979), cert. dismissed, 379 So.2d 204 (Fla. 1979). Outrageous conduct is conduct which "is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." McCarson, 467 So.2d at

278-79 (quoting Restatement (Second) of Torts § 46 Comment (d) (1965)).  The issue of whether the Defendants' activities rise to the level of being extreme and outrageous so as to permit a claim for intentional infliction of emotional distress is a legal question in the first instance for the court to decide as a matter of law.  Baker v. Florida National Bank, 559 So.2d 284, 287 (Fla. 4th DCA 1990).

The conduct which Plaintiff relies upon to meet the threshold requirement of outrageousness is Defendant Woodlawn's delivery of decedent's viscera to Plaintiff under the mistaken belief that the bag containing the viscera instead was a bag containing decedent's personal effects, and each of the other Defendants conduct in mishandling the bag of viscera.  Plaintiff's claims, however, are not supported by evidence of a specific intent on the part of any of the Defendants to cause harm to Plaintiff by giving her a bag containing her spouse's viscera.  Instead, Plaintiff argues that the conduct was so reckless that it constituted "outrageous" behavior and she references each of the Defendants' deficiencies, *inter alia*, with respect to industry standards or statutory guidance.  The Court disagrees.

To maintain a cause of action for IIED the wrongdoer's conduct must be found to be intentional or reckless, that is, he intended to act when he knew or should have known that emotional distress would likely result.  Dominguez v. Equitable Life Assur. Soc. of the United States, 438 So.2d 58 (Fla. 3d DCA 1983).  The court in Dominguez noted that the description of the IIED tort as "the intentional infliction of severe mental or emotional distress" is somewhat misleading because it erroneously suggests that the defendant intended to inflict severe mental or emotional distress when, in fact, all that need by [sic] shown is that he intended his specific behavior and knew or should have

known that the distress would follow." Id. at 59 fn1, citing Restatement (Second) of Torts § 46 (1965); see also Ford Motor Credit Co. v. Sheehan, 373 So.2d 956 (Fla. 1st DCA 1979). Viewing the evidence in the light most favorable to Plaintiff, the Court is unable to conclude that these Defendants' actions were so extreme as to meet the threshold test of outrageousness in order to support Plaintiff's IIED claim. While the Court is concerned about the apparent failings on the part of Woodlawn, as the last actor to handle the bag of viscera – in whatever state it existed, the standard of outrageousness simply has not been met.

Similarly, Plaintiff's request for punitive damages pursuant to Florida Statutes § 768.72, must fail. Florida Statutes § 768.72 provides the following:

> (1) In any civil action, no claim for punitive damages shall be permitted unless there is a reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of such damages . . .
>
> (2) A defendant may be held liable for punitive damages only if the trier of fact, based on clear and convincing evidence, finds that the defendant was personally guilty of intentional misconduct or gross negligence. As used in this section, the term:
>
> (a) "Intentional misconduct" means that the defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage.
>
> (b) "Gross negligence" means that the defendant's conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct.
>
> (3) In the case of an employer, principal, corporation, or other legal entity, punitive damages may be imposed for the conduct of an employee or agent only if the conduct of the employee or agent meets the criteria specified in subsection (2) and:

>(a) The employer, principal, corporation, or other legal entity actively and knowingly participated in such conduct;
>
>(b) The officers, directors, or managers of the employer, principal, corporation, or other legal entity knowingly condoned, ratified, or consented to such conduct; or
>
>(c) The employer, principal, corporation, or other legal entity engaged in conduct that constituted gross negligence and that contributed to the loss, damages, or injury suffered by the claimant.
>
>(4) The provisions of this section shall be applied to all causes of action arising after the effective date of this act.

Fla. Stat. § 768.72. The conduct required to obtain a punitive damage award was articulated in 1984 by the Supreme Court of Florida in White Construction Company, Inc. v. Dupont, 455 So.2d 1026, 1028-29 (Fla. 1984), receded from on other grounds, Murphy v. International Robotic Sys., Inc., 766 So.2d 1010 (Fla. 2000). In Dupont, the Florida Supreme Court reversed both the trial and the appellate courts' decisions and held that the issue of punitive damages was improperly submitted for jury determination on a truck driver's claims that a mining company's loader hit his truck and caused the driver's own truck to roll over him. The Supreme Court of Florida articulated the conduct required to obtain an award of punitive damages as follows:

>The character of negligence necessary to sustain an award of punitive damages must be of a 'gross and flagrant character, evincing reckless disregard of human life, or of the safety of persons exposed to its dangerous effects, or there is that entire want of care which would raise the presumption of a conscious indifference to consequences, or which shows wantonness or recklessness, or a grossly careless disregard of the safety and welfare of the public, or that reckless indifference to the rights of others which is equivalent to an intentional violation of them.'

Id. at 20 n.12 (citations omitted). See Estate of Williams ex. rel. Williams v. Tandem Health Care of Florida, Inc., 899 So.2d 369, 376-77 (Fla. Dist. Ct. App. 2005). As noted

above, the Court has concerns about Defendant Woodlawn in particular, in addition to the other Defendants' apparent failings with respect to standard practice, but none of these concerns reach the level of a finding of intentional or extreme conduct.

The Court now turns to the remaining claims, each of which involves issues of disputed material facts and is inappropriate for resolution by summary judgment.

**NEGLIGENCE**

To state a claim for negligence, the plaintiff must allege the existence of a duty, breach of that duty, causation, and damages. See, e.g., Clay Elec. Coop., Inc. v. Johnson, 873 So.2d 1182 (Fla. 2003).

Defendant Holloway

Plaintiff argues that by undertaking to perform embalming services, Defendant Holloway owed a duty to Plaintiff to exercise the degree of care that a reasonably prudent embalmer would exercise under similar circumstances. Rivera argues that Holloway should have foreseen that the state of decedent's remains, i.e., that the viscera was left in a bag instead of being returned to the body, was so unusual that providing only oral notice to the delivery person might have resulted in a scenario similar to the one that occurred herein. Defendant Holloway argues that no specific duties were breached, and notes that Plaintiff's own expert, Roy Weimert, admits that Florida law does not specify a particular color of bag which must be used for viscera.

Although there may not exist a statute or rule explicitly requiring a specific color of bag in which to place the viscera, it is clearly established that one who undertakes to

-10-

act, even when under no obligation to do so, thereby becomes obligated to act with reasonable care. Union Park Mem'l Chapel v. Hutt, 670 So.2d 64 (Fla. 1996). When someone voluntarily undertakes to do an act that, if not accomplished with due care might increase the risk of harm to others or might result in harm to others due to their reliance upon the undertaking, that person operates under a duty of reasonable care, because a "foreseeable zone of risk" is created. McCain v. Florida Power Corp., 593 So.2d 500 (Fla. 1992). Moreover, the lack of a statutorily imposed specific duty does not free Holloway from liability under a negligence theory. For example, although there is no specific legal duty to create an embalming report, the regular use of an embalming report is "an unwritten thing in the [funeral] industry." Weimert Dep. 28:5-6, June 26, 2006. The Court is unable to determine, based upon the disputed facts, whether Holloway exercised reasonable care in this case and, as such, summary judgment must be denied.[2]

Defendants Premier and Woodlawn

Plaintiff claims that Defendant Premier was negligent in handling the bag of viscera by, *inter alia*, not ensuring that employees of Defendant Woodlawn knew what was in the bag of viscera (the outside of which apparently was unmarked). Specifically, as Defendant Woodlawn's expert witness has testified, John Knapik, Premier's representative apparently failed in at least two aspects of his conduct when he

---

[2] It should be noted that there may be a failure of proof as to the damages component of Plaintiff's negligence. Plaintiff has failed to present any evidence, aside from her deposition testimony, concerning her alleged injuries.

-11-

delivered the body and bag of viscera to Woodlawn. First, it appears that Knapik failed to insist on speaking to a licensed funeral director who, Defendant Woodlawn argues, would have understood the significance of the situation. Second, apparently Knapik failed to leave any written instruction or take any other action to see that Woodlawn received the proper notice regarding the unusual circumstances. Dyer Expert Report at 10, March 29, 2006. Premier's representative defends his action in part by claiming he was only providing removal services, casketing, and cosmetology, which did not require him to do more than he did.

Plaintiff alleges that Defendant Woodlawn also was negligent by failing to take precautions which would have avoided the ultimate delivery to Plaintiff of her deceased husband's viscera. Plaintiff argues that the bag not only should have felt unusual to any employee (especially any licensed funeral director) of Woodlawn handling the bag, but also that it might already have had an odor that should have alerted Woodlawn's employees to its contents. Woodlawn claims to have been prohibited from inspecting the bag's contents pursuant to its own concerns about liability for any personal items later found to be missing.

In light of the multiple contested issues of material facts relating to these negligence claims, including everything from what color the bag was at any given time, to what precisely are the governing industry standards of care, the Court hereby denies the Defendants' motions for summary judgment.

Defendant AMC

As will be discussed below, the issue of Defendant AMC's potential liability for negligence is directly related to its alleged contractual obligations to Plaintiff – which have been contested by AMC. In light of this dispute, and consistent with the Court's observations above, summary judgment is not appropriate as to this Defendant.

**BREACH OF CONTRACT**

Plaintiff has not offered any written contract with any Defendant which contains her own signature, but rather argues that decedent's family members were making arrangements in her absence with her permission and with her as the intended beneficiary. In other words, to the extent that Plaintiff was not the actual party contracting for the services, she argues that she was – at a minimum – a third party beneficiary and that she may pursue these claims for breach. Each Defendant objects to this interpretation of their contractual liability, but the Court is not compelled to conclude that a decedent's spouse should be prohibited from bringing a breach of contract claim – particularly under the facts in this case.

A person who is not a party to a contract may not sue for breach of that contract where that person receives only an incidental or consequential benefit from the contract. Metropolitan Life Ins. Co. v. McCarson, 467 So.2d 277 (Fla. 1985). The exception to this rule is where the entity that is not a party to the contract is an intended third party beneficiary of the contract. Jacobson v. Heritage Quality Constr. Co., 604 So.2d 17 (Fla. 4th DCA 1992), cause dismissed by Jacobson v. Heritage Quality Const. Co., 613 So.2d 5 (Fla. 1993). A party is an intended beneficiary only if the parties to

-13-

the contract clearly express, or the contract itself expresses, an intent to primarily and directly benefit the third party or a class of persons to which that party claims to belong. Aetna Casualty & Surety Co. v. Jelac Corp., 505 So.2d 37 (Fla. 4th DCA 1987). Therefore, in order to sustain a cause of action for breach of a third party beneficiary contract, the following elements must be set forth:

(1) a contract between A and B;

(2) an intent, either expressed by the parties, or in the provisions of the contract, that the contract primarily and directly benefit C, the third party (or a class of persons to which that party belongs);

(3) breach of that contract by either A or B (or both); and

(4) damages to C resulting from the breach.

Additionally, in order to find the requisite intent, it must be shown that both contracting parties intended to benefit the third party. It is insufficient to show that only one party unilaterally intended to benefit the third party. See Clark and Co. v. Department of Ins., 436 So.2d 1013, 1016 (Fla. 1st DCA 1983).

Defendant AMC has adopted the motions for summary judgment filed by its co-Defendants, but has offered nothing persuasive to suggest that summary judgment should be entered in its favor as to the breach of contract claim, particularly since its own contract specifies that the funeral services, at least the embalming services, were requested by the "family" of the decedent, and that payment was received from the "family." See Exhibit A, Plaintiff's Memorandum in Opposition, filed July 31, 2006. Apparently, Defendant AMC entered into an agreement with Defendants Holloway and Premier to provide services to satisfy AMC's obligation with decedent's family. As there

are several disputed issues of material fact regarding AMC's contractual obligations and conduct, the Court hereby denies AMC's request for summary judgment.

Defendant Holloway argues that there is no evidence of its own contract with Plaintiff, nor that it even knew of Plaintiff's existence and, as such, any third party beneficiary claim must fail. However, the Court notes that Plaintiff's name appears on a "Release & Embalming Authorization" dated June 5, 2003, authorizing the Duval County Medical Examiner's Office to release the decedent's body. See Exhibit A, Plaintiff's Memorandum in Opposition, filed July 31, 2006. Moreover, as Plaintiff is part of the Rivera "family," it appears that she falls within the class of persons intended to be benefitted by the funeral services provided.

Similarly, Defendant Premier argues that it had no contract with Plaintiff and that Plaintiff cannot pursue a third party beneficiary claim against them. Premier's argument that a spouse -- even if the spouse was separated at the time, which is in dispute in this case -- cannot be included within the third party beneficiary concept is simply unsupportable. Moreover, particularly in light of the alleged role apparently played by Premier's representative, John Knapik, at the time the decedent's family entered into its agreement with Defendant AMC, it is difficult to conclude at this point that Premier knew nothing of Plaintiff's existence as a potential beneficiary of these services. See Exhibit A, Plaintiff's Opposition, filed July 31, 2006 (Knapik's signature appears in an AMC "Statement of Funeral Goods and Services Selected"). In light of the above, summary judgment is denied as to both Defendant Holloway and Defendant Premier on the breach of contract claims.

As to Defendant Woodlawn, the Court need not address in great detail the

arguments for summary judgment, as it clearly would be inappropriate to grant summary judgment for a Defendant whose contract states that it is for the "spouse" of the decedent. In addition, there are disputed issues as to the nature of the alleged breach and other matters.

**FLORIDA STATUTES § 470 AND § 497**

Plaintiff Rivera filed her original complaint against Defendants Holloway and Woodlawn on June 7 2005, alleging violations of Florida Statutes § 470 and § 497 and in particular § 470.0315 (Storage, Preservation, and Transportation of Human Remains) and § 497.386 (Storage, Preservation, and Transportation of Human Remains). At some time after this case was filed, § 470 of the Florida Statutes, previously included under Title XXXII: Regulation of Professions and Occupations, which governed Funeral Directing, Embalming, and Direct Disposition, was repealed and renumbered or merged into § 497, which is found under Title XXXIII: Regulation of Trade, Commerce, Investments, and Solicitations. This change was effective as of October 1, 2005. As none of the pertinent terms of the statute related to Plaintiff's claims have changed, the Court will refer to the statute's current numbering, i.e., § 497.

Florida Statute § 497.386 governs the storage, preservation, and transportation of human remains. Specifically, § 497.386 states the following:

> (1) A person may not store or maintain human remains at any establishment or facility except an establishment or facility licensed under this chapter or a health care facility, medical examiner's facility, morgue, or cemetery holding facility.
>
> (2) A dead human body may not be held in any place or in transit over 24 hours after death or pending final disposition unless the body is

> maintained under refrigeration at a temperature of 40 degrees Fahrenheit or below or is embalmed or otherwise preserved in a manner approved by the licensing authority in accordance with the provisions of this chapter.
>
> (3) A dead human body transported by common carrier or any agency or individual authorized to carry dead human bodies must be placed in a carrying container adequate to prevent the seepage of fluids and escape of offensive odors. A dead human body may be transported only when accompanied by a properly completed burial-transit permit issued in accordance with the provisions of chapter 382.
>
> (4) The licensing authority shall establish by rule the minimal standards of acceptable and prevailing practices for the handling and storing of dead human bodies, provided that all human remains transported or stored must be completely covered and at all times treated with dignity and respect.
>
> (5) A person who violates any provision of this section commits a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083.

Fla. Stat. § 497.386.

Focusing primarily on the third and fourth section of the statute, the Court is unable to conclude that Defendants placed the viscera in a "carrying container adequate to prevent the seepage of fluids and escape of offensive odors" and that Defendants treated decedent "at all times with dignity and respect." For the reasons noted above in the discussion of negligence, the Court denies the motions for summary judgment as to each of the Defendants.

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AND TORTIOUS INTERFERENCE WITH A DEAD BODY

The Court will address these remaining two claims collectively, as the standards are highly similar.

Under Florida law, to prevail on a claim for negligent infliction of emotional distress ("NIED") a plaintiff must allege and prove the following: (1) that the plaintiff has suffered a significant discernible or demonstrable physical injury as a result of psychological trauma; (2) that the plaintiff is closely related to the injured party; and (3) that the plaintiff was directly involved in the event causing the original injury. Champion v. Gray, 478 So.2d 17, 20 (Fla. 1985); Zell v. Meek, 665 So.2d 1048 (Fla. 1995). The Florida Supreme Court, in Brown v. Cadillac Motor Car Division, 468 So.2d 903, 904 (Fla.1985), has held that a person who seeks to recover for mental distress must allege that the "psychological trauma [has] cause[d] a demonstrable physical injury such as death, paralysis, muscular impairment or similar objectively discernible physical impairment."

Plaintiff's claim of tortious interference with a dead body relies on Gonzalez v. Metropolitan Dade County Health Trust, 651 So. 2d 673 (Fla. 1995). In Kirksey v. Jernigan, 45 So. 2d 188 (Fla. 1950), the Supreme Court of Florida reaffirmed the rule that damages are not recoverable for mental pain and anguish unconnected with physical injury in an action for simple negligence. That case was brought by a parent against an "undertaker" who allegedly removed the corpse of a five-year-old without permission, refused to surrender the body, negligently embalmed the body and ultimately held the body as security for the payment of an excessive fee. While the Court did not find for the parent, the Court did recognize that such cause of action may be maintained "where the wrongful act is such as to reasonably imply malice, or where, from the entire want of care of attention to duty, or great indifference to the persons, property, or rights of others, such malice will be imputed..." Id. at 189. In Estate of

Harper v. Orlando Funeral Home, Inc., 366 So.2d 126 (Fla. 1st DCA 1979), cert. denied, 386 So.2d 637 (Fla. 1980), the Florida District Court of Appeals found that the defendants actions did not constitute willful or wanton misconduct where a casket provided by the funeral home began falling apart as the pallbearers carried the body to the grave. Although the district court found the result reasonably foreseeable because of the inadequate and defective construction of the coffin, the court apparently found that such conduct did not exceed all bounds reasonably tolerated by society such as to imply malice for the entire want of care or great indifference.

Defendants argue that summary judgment should be entered as to Rivera's NIED and tortious interference with a dead body claims because Rivera has failed to produce evidence of physical injury or willful or wanton misconduct. Plaintiff, in opposing this summary judgment motion may not simply rest upon the mere allegations or denials of Defendants' arguments, Rivera is required to set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e).

In the excerpted portions of the deposition Ms. Rivera refers to feeling anxiety, depression, anger, sick to her stomach, emotionally and physically numb, and experiencing a lack of energy and motivation. Rivera Dep. 289:17-22, 292:2-25, April 4, 2006. Additionally, Rivera testified as to her history of taking antidepressants "on and off" for the "last seven years." Id. 312:19-21. This evidence is far from compelling as to the question of a "demonstrable physical injury" -- but the Court will deny the Defendants' motions for summary judgment on these two claims at this time. The Defendants will be permitted to renew these arguments during trial if Plaintiff is unable to establish that she suffered the requisite physical discernable injuries.

In summary, for all of the above reasons, it is hereby

ORDERED AND ADJUDGED that Defendants' motions for summary judgment are GRANTED solely as to Count V (Intentional Infliction of Emotional Distress), and are DENIED as to all other counts. In addition, it is hereby

ORDERED AND ADJUDGED that Plaintiff's claim for punitive damages is DISMISSED. That is, Defendant Holloway's Motion to Strike, filed September 20, 2006, is GRANTED.

DONE AND ORDERED in chambers in Miami, Florida, this 27th day of October, 2006.

_WM M Hoeveler_
WILLIAM M. HOEVELER
UNITED STATES DISTRICT COURT JUDGE

Copies to: Counsel of Record.